HENRY R. STERN, JR., Superintendent of Insurance, as Liquidator of the Dairy Transportation Employee Pension Trust Fund, Respondent, v. BREAKSTONE BROS., INC., et al., Appellants. JOSEPH TREROTOLA, as Trustee of Dairy Transportation Drivers, Helpers and Terminal Employees, Local 770, Affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Respondent, et al., Defendants.

First Department, June 24, 1969.

*F. W. H. Adams* of counsel (*Satterlee, Warfield & Stephens* of counsel; *Robert H. Jones, III,* attorney), for appellants.

*Irvin Waldman* of counsel (*Isaac Goldstein,* attorney), for Henry R. Stern, Jr., respondent.

*Bruce H. Simon* of counsel (*Cohen & Weiss,* attorneys), for Joseph Trerotola, respondent.

*Per Curiam.* Plaintiff, Superintendent of Insurance, instituted this action against several companies who are signatories to the Dairy Transportation Employee Pension Trust Fund. While the action is designated as an accounting, what it actually seeks from the appellants is the payment of contributions claimed to be due. These defendants counterclaim for the amounts they have previously contributed. Defendants moved for summary judgment dismissing the complaint and for judgment on their counterclaim.

The Superintendent has not disputed any allegation of fact. His opposition is based purely on the contention that the facts are not within his knowledge. This ground is untenable. Virtually all of the operative facts are either matters of record or are uncontroverted by the parties in interest (the employers and the union) and were readily ascertainable had the plaintiff sought to be informed by discovery procedures.

These facts are: Prior to 1953 the 29 employer defendants were engaged in the business of transporting dairy products by truck. While the business conducted by them was primarily in New York State, it extended over a very wide range. The labor relations of these employers were governed by separate contracts with 12 different locals of the Teamsters Union. Contract terms differed very materially, with the consequence that some employers enjoyed advantages and their employees were disadvantaged correspondingly. Efforts to remedy this situation resulted first in a uniform agreement to which all of the employers and the respective unions agreed. This agreement expired in 1955. During its existence the Teamsters Union organized a new Local, No. 770, which was designed to embrace all the drivers of the 12 locals. All but two of the locals transferred their members to 770. However, those two Locals, 229 and 602, agreed with the employers and 770 on a contract expiring in 1957.

Upon the expiration of this contract the three locals refused to bargain in connection with the others. The result was that two employers signed agreements with Local 602 and one with a new Local, 182. The others signed with 770. The agreements were materially different.

The agreement with 770 called for setting up the Pension Trust Fund in question. However, even before it was actually in existence differences arose as to its interpretation. Also, there were disputes arising from the fact that two of the employers had separate contracts with the other locals. The employers demanded arbitration. While the arbitration proceeding was pending the employers and 770 met in an effort to settle their differences. This resulted in a written agreement dated July, 1959, by the terms of which contributions to the fund were to begin on August 1, 1959; contributions were to terminate on November 30, 1959, unless by that time Marcus Trucking and Central Milk Haulers had made their contributions to the fund, but would resume if and when those two firms made their contributions; and if by May 31, 1960, Marcus and Central had not paid or any other signatory was 60 days in default, all contributions, less proportionate shares of expenses, would be returned. These provisions became an amendment to the original agreement. The amendment was ratified by the union, Local 770. The notice of arbitration was then withdrawn.

Marcus never did make any contribution to the fund. The agreement expired in 1960 and was not renewed. Local 770 was dissolved in 1961. This was the situation when the Superintendent took over the fund, which consisted of the contributions made between August 1 and November 30, 1959. As to these there was no default.

Two actions followed. A trustee for Local 770 sued the trustees of the pension fund to direct them to turn over the funds collected to be distributed to the various pension funds of the locals with whom the former members of 770 are affiliated. The employers instituted suit in the State court for return of their contributions. In both actions the Superintendent intervened and both actions were dismissed upon his application based on his primary exclusive jurisdiction to liquidate the fund.

It must be apparent that there are two distinct questions involved: one concerns the possible obligation of the defendants to make further contributions; the other is the proper disposition of the fund resulting from the contributions already made.

Undoubtedly the Superintendent would have the right to sue, as he has, for any payments that might be owing. However, his duties, and his consequent rights in connection with the fund, do not place him in any different position from any other litigant. In order to obtain a judgment he must establish that the contributions are due. This he has failed to do and

he takes the position that any showing of that nature will have to be made by the representative of Local 770. The latter does not dispute any of the facts but claims that there was no consideration for the agreement of July, 1959. This contention is unsound. Admittedly, there were bona fide disputes between the parties to the existing agreement, which disputes were the subject of a pending proceeding. Concededly, these disputes were settled and the settlement ratified by the union. Pursuant to the terms of the settlement agreement all contributions from the defendants called for were made. It would be hard to give a more complete example of the presence of consideration.

Having failed to show any factual or legal question as to defendants' right to have the complaint against them dismissed, that portion of defendants' motion should have been granted. As to the counterclaim, the situation is different. The employers claim a contractual right to the fund, the union claims a superior equitable right in the members. These are proper questions to be determined, as well as others that may arise in the course of liquidation and in the procedure for that purpose to be conducted by the Superintendent. This is the determination in the two prior actions. For this reason there can be no determination of the merits of the counterclaim in this action.

The order entered January 13, 1969, should be reversed on the law and defendants-appellants' motion for summary judgment dismissing plaintiff's complaint granted and defendants' counterclaim dismissed, without costs to any party as against the other.

TILZER, J. (dissenting). I dissent insofar as summary judgment is granted dismissing the plaintiff's complaint. There is at least an '' arguable '' issue, as Special Term found, concerning the absence of consideration pertaining to the amendatory agreement of July, 1959 which purported to forgive the employers of their obligation to make stated pension fund contributions pursuant to the collective bargaining agreement of August 1, 1957. Those affected by the amendment, of course, were the employees as to whom contributions of 14½ cents an hour were to be paid into the pension fund. The question is whether their union might destroy those benefits. That the fund involved here was established to provide employee benefits, that it actually came into existence and was maintained for many months, was the holding of Justice STALEY wherein the plaintiff Superintendent was found to have exclusive jurisdiction and directed to proceed with the liquidation of the fund (*Matter of Dairy Transp. Assn.* v. *Decker,* 42 Misc 2d 734

[Sup. Ct., Albany County, 1963]). Cognizance of the interests of the employees, as well as the orderly administration of the defunct pension fund, requires that the defendants-appellants prove their defense at trial. The order appealed from insofar as it denied defendants-appellants' motion for summary judgment dismissing the complaint should be affirmed.

STEVENS, P. J., EAGER, McGIVERN and STEUER, JJ., concur in Per Curiam opinion; TILZER, J., dissents in opinion.

Order entered January 13, 1969, reversed, on the law, without costs to any party as against the other, defendants-appellants' motion for summary judgment dismissing plaintiff's complaint granted and defendants' counterclaim dismissed, and the Clerk is directed to enter judgment in favor of defendants-appellants dismissing plaintiff's complaint and dismissing defendants' counterclaim.